**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Valerie Soto,

Plaintiff,

v.

Sweet Home Belmont, et al.,

Defendants.

Case No. 2:22-cv-00632-BNW

**ORDER**

Before this Court is Defendant Sweet Home Belmont, LLC's (SHB) motion for summary judgment. ECF No. 125. Plaintiff opposed, and SHB replied. ECF Nos. 137, 149. SHB argues that Plaintiff lacks evidence that SHB breached its duty of care or caused Ms. Mactier's death. It also appears to argue that its own evidence shows that it met the standard of care and did not cause her death. Plaintiff responds that genuine disputes of material fact remain as to whether SHB called Infinity Hospice, whether it should have summoned emergency medical services, and whether it improperly increased Ms. Mactier's oxygen.

The parties are familiar with the facts and arguments in support of this motion. As a result, this Court only incorporates them as relevant to its order. For the reasons below, this Court denies the motion.

## I. LEGAL STANDARD

### A. Summary Judgment Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "moving party without the ultimate burden of persuasion at trial ... may carry its initial burden of production by either ... produc[ing] evidence negating an essential element of the nonmoving party's case," or by "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party fails to carry its initial burden, the nonmoving party has no obligation to produce anything, and summary judgment must be denied. *Id.* at 1102–03.

If the moving party carries its initial burden, the nonmoving party must produce evidence to support its claim and set forth specific facts showing that there is a genuine issue for trial. *Id.* at 1103. The nonmoving party must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252. The nonmoving party must cite particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A). The court need only consider the cited materials, though it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

In deciding the motion, the court views the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). The court does not weigh the evidence or make credibility determinations; those are functions for the jury. *Anderson*, 477 U.S. at 255.

**B. Wrongful Death Legal Standard**

Nevada law governs Plaintiff's wrongful death claim. When a person's death "is caused by the wrongful act or neglect of another," the decedent's heirs may maintain an action for damages against the person who caused the death. NRS 41.085(2). Where, as here, the claim is premised on negligent conduct, the plaintiff must show "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). Expert testimony on medical causation must be

stated to a reasonable degree of medical probability. *Morsicato v. Sav-On Drug Stores, Inc.*, 121 Nev. 153, 157–58, 111 P.3d 1112, 1115–16 (2005).

## II. ANALYSIS

Plaintiff's first amended complaint alleges that SHB breached its duty of care by failing to provide Ms. Mactier with appropriate care. ECF No. 39 at 6. The conduct underlying this claim includes (1) SHB's failure to call Infinity Hospice on April 19, 2020, (2) SHB's failure to seek emergency medical attention on April 19, 2020, and (3) SHB's increase of Ms. Mactier's oxygen without an order from a medical provider. SHB's motion also addresses allegations that Ms. Mactier was restrained and denied use of a phone, that SHB was unlicensed or an inappropriate facility, and that Plaintiff was not notified of her mother's admission or death. ECF No. 125 at 18–21. Plaintiff responds that these allegations are not the basis for her wrongful death claim. ECF No. 137 at 10. Accordingly, this Court does not address them.

It is not entirely clear how SHB seeks to carry its initial burden of production. At times, SHB argues that Plaintiff lacks evidence to prove her claim. *See, e.g.*, ECF No. 125 at 14 ("The burden of proof however is not on the defendant."); *id*. at 17 ("Plaintiff provided no evidence that Sweet Home's acts were wrongful or fell below the standard of care."). At other times, SHB argues that its own evidence, including medical records, expert opinions, and the reports of the coroner, police, and state agencies, "establish[es] Sweet Home met the duty of care." *Id*. at 14. This Court need not decide which method SHB relies on or whether it succeeds. Even assuming SHB carried its initial burden under either method, summary judgment is inappropriate because Plaintiff has identified evidence creating genuine disputes of material fact as to breach and causation. *See* Fed. R. Civ. P. 56(a); *Nissan Fire*, 210 F.3d at 1103 (if the nonmoving party "produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion").

Next, SHB does not dispute that it owed Ms. Mactier a duty of care. ECF No. 125 at 13 ("Sweet Home owed a duty of care to Ms. Mactier."); *id.* at 14 ("Sweet Home had a duty to Ms. Mactier to provide care at the standard of a similarly situated group home."). Nor does SHB argue that Plaintiff lacks evidence of damages. This Court therefore turns to the contested elements: breach and causation.

**A. Breach**

SHB argues that Plaintiff "failed to construct a detailed account of the resident's deterioration, the facility's response, and the way the response fell below the standard of care." ECF No. 125 at 15. It relies on testimony that it called Infinity Hospice on April 19, 2020, evidence that Infinity did not direct a transfer to the hospital, and expert opinions that it met the standard of care. *Id.* at 4–6, 16–18 (citing to exhibits attached to motion). But as this Court noted in its spoliation order, there is a dearth of records regarding April 19, 2020, including what SHB did (and when).

**1. Whether SHB Called Infinity Hospice**

Plaintiff points out, and SHB does not dispute, that SHB has not identified any document showing that it called Infinity Hospice on April 19, 2020. ECF No. 137 at 6–7. SHB relies on the testimony of its caregiver, Miyeon Lee, that she called Infinity as well as Keith Wayne's depositions concluding the same. ECF Nos. 125-21 at 66, 125-18 at 44. But Dr. Janapati of Infinity Hospice testified that such a call should be documented in Infinity's records, and that the absence of documentation "probably" indicates the call was not made. ECF No. 137-2 at 26–28. Moreover, SHB's own policies and procedures require caregivers to document changes in a resident's condition, the time they notified hospice, the name of the hospice employee who took the report, and any orders hospice gave. ECF No. 137-3 at 64–65, 82–83; Tr. at 97–98, ECF No. 156, Bates No. 0048. There is no record of any such call. This evidence, together with the adverse inference instruction this Court will give, creates a genuine dispute of material fact as to whether SHB called Infinity Hospice on April 19, 2020.

**2. Whether SHB Should Have Summoned Emergency Medical Services**

SHB's policies and procedures required caregivers to summon emergency medical services when a resident experienced a medical emergency, including shortness of breath. ECF No. 137-3 at 103–105; ECF No. 156 at 106. SHB's Rule 30(b)(6) witness testified that these policies apply to all residents, whether or not they are on hospice care. ECF No. 137-3 at 104.

Plaintiff cites ECF No. 125-1 for the proposition that SHB concedes it did not contact 911. That record is Ms. Mactier's death certificate, and it contains no such concession. Nevertheless, SHB does not contend that it called 911. Instead, it argues that calling 911 would have been

improper given Ms. Mactier's hospice plan and DNR. ECF No. 125 at 16–18. Thus, it appears undisputed that SHB did not call 911.

The parties dispute whether that failure breached SHB's duty of care. Plaintiff's expert, Dr. Menchine, opines that SHB fell below the standard of care by not summoning emergency medical services. ECF No. 137-4. SHB's experts and Infinity's physicians disagree. *See* ECF No. 125 at 4, 6–7 (citing opinions of Channa Kelly, Dr. Wachtel, Dr. Jorgenson, and Dr. Janapati). Resolving that conflict requires weighing the evidence and assessing the credibility of competing experts, which this Court may not do on summary judgment. *Anderson*, 477 U.S. at 255.

**3. Whether SHB Improperly Increased Ms. Mactier's Oxygen**

Plaintiff also contends that SHB staff increased Ms. Mactier's oxygen on April 19, 2020, without an order from a medical provider. ECF No. 137 at 8–9. Dr. Menchine opines that SHB staff had no authority or medical training to increase Ms. Mactier's oxygen without a provider order and without consulting her medical care team. ECF No. 137-4 at 6. SHB responds that even if oxygen levels were raised, that may be done for a patient's comfort. ECF No. 125 at 7, 15–16 (citing ECF No. 125-8). Assuming that is what Channa Kelly concluded, this would be another conflict between experts that this Court cannot resolve on summary judgment. *Anderson*, 477 U.S. at 255.

**4. Conclusion as to Breach**

Drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could find that the dearth of documents surrounding April 19, 2020, is probative of whether SHB complied with its own policies and procedures, including by calling hospice and summoning emergency medical services. Together with the adverse inference instruction, that evidence could lead a reasonable jury to conclude that SHB more likely than not breached its duty of care. A reasonable jury could also credit Dr. Menchine's opinions that SHB breached its duty of care by increasing Ms. Mactier's oxygen without a provider order. SHB's evidence conflicts with Plaintiff's, but it does not eliminate the dispute. Weighing that evidence is for the jury. Accordingly, genuine disputes of material fact exist as to whether SHB breached its duty of care in responding to Ms. Mactier's change in condition on April 19, 2020.

**B. Causation**

**1. Failure to Summon Emergency Medical Services**

SHB argues that Ms. Mactier died of natural causes. It relies on the coroner's determination that she died of congestive heart failure and end-stage COPD, and on Dr. Wachtel's opinion to the same effect. ECF Nos. 125-1, 125-2, 125-7. SHB also argues that Dr. Menchine could not state to a reasonable degree of medical certainty that SHB's conduct caused Ms. Mactier's death, and that he opined only that she could have been intubated and stabilized. *Id.* at 6, 15–17.

Under Nevada law, expert testimony on medical causation must be stated to a reasonable degree of medical probability, not certainty. *Morsicato*, 121 Nev. at 157–58, 111 P.3d at 1115–16. Dr. Menchine's opinions meet that standard. He opines, to a reasonable degree of medical probability, that SHB "directly contributed to [Ms. Mactier's] death on 4/20/2020 by not summoning emergency medical services and transferring her to an acute care hospital." ECF No. 137-4 at 6**.** He further opines that "[h]ad she been transferred to an acute care hospital, her emergent medical condition would have been stabilized, and she would not have died when she did on 4/20/2020." *Id.* That evidence directly conflicts with the evidence SHB relies on. Whether Ms. Mactier died solely from her underlying conditions or whether SHB's failure to summon emergency medical services contributed to her death is a question for the jury.

SHB's argument that Infinity Hospice did not direct a transfer to the hospital does not change this conclusion. ECF No. 125 at 6, 16–17. That argument assumes SHB called Infinity on April 19, 2020, which, as discussed above, is itself genuinely disputed.

**2. The DNR**

SHB also argues that transferring Ms. Mactier to the hospital would not have changed the outcome because she had signed a DNR, and because intubation was contrary to both the DNR and her hospice plan. ECF No. 125 at 6, 16–18 (citing to several exhibits). The DNR provides that "[i]n the event of a cardiac or respiratory arrest," Ms. Mactier refused resuscitative measures, including intubation and artificial ventilation. ECF No. 125-13. Plaintiff points to evidence from Dr. Jorgenson that the DNR applied only in the event of cardiac or respiratory arrest and that such

a condition requires a medical diagnosis. ECF No. 125-11 at 41–42. Plaintiff points to the absence of such diagnosis and SHB does not address that in its reply. In addition, Dr. Menchine likewise notes that there is no documentation that Ms. Mactier refused or would have declined treatment for worsening respiratory distress that fell short of respiratory arrest. ECF No. 137-4 at 47-48. At bottom, whether the DNR and hospice plan foreclosed intervention for respiratory distress short of arrest, and what Ms. Mactier would have wanted in that circumstance, are disputed questions of fact. They are material to causation, and a reasonable jury could resolve them in Plaintiff's favor.

**3. Increase in Oxygen**

Dr. Menchine opines, to a reasonable degree of medical probability, that "[e]lecting to increase the oxygen instead of seeking immediate medical care contributed to Ms. Mactier's death." ECF No. 137-4 at 46. This, too, is a conflict between experts for the jury to resolve.

**4. Conclusion as to Causation**

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that SHB's response to Ms. Mactier's change in condition on April 19, 2020, caused or contributed to her death. Genuine disputes of material fact therefore exist as to causation.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Sweet Home Belmont, LLC's motion for summary judgment (ECF No. 125) is **DENIED.**

**IT IS FURTHER ORDERED** that the parties must file a joint pretrial order within 30 days of the date of this order.

DATED this 25th day of September 2026.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE